# SAWYER & BOULLET *vs.* P. & G. LORILLARD.

[ACTION OF DETINUE.]

1. *Factor, to whom goods are consigned for sale; to what commissions entitled, and what lien has.*—As a general rule, in the absence of any agreement to the contrary, a factor, to whom goods are consigned for sale, is entitled to commissions as such only on the amount of the goods sold, and has a lien upon the goods in his possession, and upon the price of such as may have been sold, not only for his commissions but also for advances, and for disbursements made to preserve the property and all other necessary expenses and charges that are certain, and not sounding in damages merely.

2. *Same, lien of; how may be impaired or lost.*—Such liens may be lost by the voluntary parting with the possession by the factor, or they may be waived by any contract or agreement, by which said liens are surrendered, or become inapplicable—as, for example, if he agrees to deliver the property to, or to hold the same as the property of, a third person.

3. *Principles of law enunciated, applied to case at bar.*—H. and L. N. & Co. purchased a quantity of tobacco from P. & G. L. of New York, and shipped it, in the name of L. N. & Co., to S. & B., factors, at Mobile, Ala., for sale on commission. Afterwards L. N. & Co. and H. disclosed to S. & B. the interest of H. in the tobacco, and informed them that it had been purchased of P. & G. L. on time, and that H. and L. N. & Co. were unable to pay at maturity notes given for the tobacco, and desired to re-transfer it to P. & G. L., and with that view desired a bill of charges on the tobacco in order that P. & G. L. might know exactly what burdens it was subject to. Thereupon S. & B. gave H. and L. N. & Co. a receipt, stating, in substance, that S. & B. had received the tobacco on account of H. and L. N. & Co.; and that it "would be delivered on return of the receipt endorsed by them, and payment of charges and commissions incurred thereon." At the same time S. & B. made out and delivered to H. and L. N. & Co. an itemized bill of the charges, &c., upon the tobacco. H. went to New York, and with the consent of L. N. & Co., transferred the tobacco, and duly endorsed the receipt to P. & G. L., and gave them the bill of charges. P. & G. L. immediately notified S. & B. by telegraph and by letter, and shortly afterwards sent an agent to get possession of the tobacco, who tendered the receipt duly endorsed, paid the bill of charges, and demanded the tobacco. S. & B. refused to deliver, on the ground that they had a lien on the tobacco for commissions, &c., other than those stated in the itemized bill ; *Held,*—

Sawyer & Boullet v. P. & G. Lorillard.

1st. That the receipt must be construed in connection with the itemized bill of charges and the proof showing the reasons why both were given.

2d. That thus construed the receipt amounted to an agreement on the part of S. & B. to deliver the tobacco to P. & G. L., if it should be re-transferred to them, upon payment of the charges in the itemized bill and the return of the receipt, duly endorsed, within a reasonable time.

3d. That the receipt was a waiver by S. & B. in favor of P. & G. L. of any lien S. & B. may then have had on the tobacco for commissions or charges not contained in the itemized bill.

4. *Qualification of written charge ; when not error.*—A judgment will not be reversed, because a charge in writing, asked to be given, is given with a qualification, if the charge itself might have been refused without error. Such qualification, if it be an error at all, is an error without injury.

APPEAL from the Circuit Court of Mobile.
Tried before Hon. JOHN ELLIOTT.

This was an action of detinue, brought by the appellees, P. & G. Lorillard, against the appellants, Sawyer & Boullet, to recover certain sample packages of tobacco mentioned in the complaint. The record does not disclose upon what pleas issue was joined. There was a verdict and judgment in favor of the plaintiffs below.

The material facts of the case, as shown by the bill of exceptions, are as follows : In the summer of 1867 a large quantity of tobacco was purchased in New York from the appellees by J. T. Henderson, of Georgia, and L. C. Norvill & Co., of New Orleans, La. It was shipped to the appellants as factors, to be sold on commission, purporting to come to them from L. C. Norvill & Co., of New Orleans, and was received during the month of September, 1867. The appellants had no knowledge of any other owner of the tobacco, until about the 18th of October, 1867, when said Henderson and C. L. Norvill made known Henderson's interest and informed appellants that the tobacco had been purchased of appellees on three months time, and that Henderson and Norvill & Co. would be unable to pay at maturity their notes given for the purchase-money, and therefore intended to negotiate with appellees for a re-transfer of the tobacco to them, and, with a view to enable them to do this, desired a bill of all the

charges on the tobacco, so that appellees might know the
burdens and charges on the tobacco in the hands of appel-
lants.    Thereupon the appellants, Sawyer & Boullet, gave
Henderson and Norvill & Co. a receipt as follows :

"MOBILE, Oct. 18th, 1867.

Received from L. C. Norvill & Co., on consignment and
for sale, 594 boxes of tobacco, sundry brands ; twenty-
three cases of tobacco, sundry brands, shipped by P. &
G. Lorillard, of New York, for account of J. T. Henderson
and L. C. Norvill & Co., now stored in bonded warehouse
No. 2, in this city, which will be delivered on return of this
receipt, endorsed by them, and payment of charges and
commissions incurred thereon.

SAWYER & BOULLET."

At the same time appellants gave Henderson the bill of
charges against the tobacco, which is made part of the bill
of exceptions and set forth in the transcript as exhibit
"B."    This was a statement of an account between L. C.
Norvill & Co. and appellants, and contained an itemized
statement of the various charges on the tobacco, which,
after the credits allowed, amounted to $1,309 56-100.    The
statement in the bill of exceptions is that exhibit "B" was
made out and given to Henderson and Norvill at the time
of their visit to Sawyer & Boullet, when the receipt, dated
October 18th, was given ; but the last debt item on exhibit
"B" is dated Nov. 9th, 1867, and is as follows :    "Commis-
sion 5 per cent. on $1,253 40—$62 67," and some 14 items
in the account are dated after the 18th of October, 1867.

The bill of exceptions further recites, that Henderson,
with the consent of the said Norvill, then went directly to
New York and made the negotiation to re-transfer the
tobacco to plaintiffs, and endorsed and delivered to them
the receipt given out by the said defendants, dated the
18th of October, 1867, with the bill of charges against it,
as shown in exhibit "B ;" that the defendants were imme-
diately advised by telegraph of the transfer of the tobacco
by the said Henderson to the said plaintiffs, and on the
29th of October, 1867, plaintiffs advised the defendants by

letter of the transfer of the said tobacco to them ; that
the agent of the plaintiffs, George W. Yerby, advised the
defendants by letter from Augusta, Georgia, dated 4th of
November, 1867, that he was then on his way to Mobile to
take possession of the said tobacco.

It further appeared from the bill of exceptions that some
time after November 4th, 1867, Yerby, agent for the appel-
lees, arrived in Mobile and paid the bill of charges set
forth in exhibit "B," and demanded possession of the
tobacco, but the appellants refused to deliver it unless
Yerby would pay another bill, purporting to be an indi-
vidual account between said L. C. Norvill or L. C. Norvill
& Co., amounting to $1,203 37." Yerby at first refused to
pay this last bill, insisting that it was not a proper charge
against the tobacco or against the Lorillards, and Hender-
son, while this dispute was going on, was sent for and came
from Georgia to Mobile to aid Yerby in obtaining posses-
sion of the tobacco for the appellees. The proof further
showed that the defendants agreed on the payment of this
bill (marked "D," purporting to be an account against
Norvill, or Norvill & Co. ;) that they would at once deliver
the whole of the property to the plaintiffs, and thereupon
the said bill was paid, and the defendants undertook to
deliver the property to the plaintiffs ; that the plaintiffs
actually surrendered to the defendants the receipt to Hen-.
derson and L. C. Norvill & Co., endorsed by them, and the
property in the warehouse was actually transferred to the
plaintiffs, or their agent, the said Yerby, and the defend-
ants then and there agreed to hold the sample boxes sub-
ject to the order of the said Yerby, said boxes being then
in defendants' office ; that said Yerby sent for them a few
days afterwards and the defendants refused to deliver
them, and then addressed to the said Yerby a note as fol-
lows :

MOBILE, Nov. 25th, 1867.
*Mr. G. W. Yerby, Battle House :*

DEAR SIR—We are informed that you are making ar-
.rangements to either ship or turn the tobacco over to some

other house, thereby depriving us of the commission that is justly due us. After advising with our business friends and counsel we hereby notify you that we will not release the tobacco unless the commission is paid, according to the original contract made when we first received it for sale. If we have been misinformed, and you still intend for us to sell it we will be glad to do so, otherwise we will protect ourselves.

Trusting that this much vexed question will cause no hard feelings between us, we remain truly,

SAWYER & BOULLET.

The proof tended to show, that after this letter was sent to the agent, Mr. Yerby, the defendants claimed as commissions, still due and unpaid on property unsold, about $1,500 00. There was no proof in the cause that the defendants ever claimed, or pretended to claim, any commissions on the property unsold by them prior to the date of the letter above copied; but the proof of the plaintiffs was that no such claim was ever set up before that date.

The proof of the defendants tended to show that the defendants, at the instance of said Norvill & Co., paid all the freight and charges, effected insurances, attended to the usual custom house duties, assessing the revenue tax, &c., and gave bond to the government for some $16,000 00, and furnished their own securities, made advances in money as shown in the schedules B and D, heretofore mentioned; that defendants had taken samples and prepared the property for sale, and had expended a great deal of time and labor in and about the shipment, which was according to their duty as factors, the said owners not being in Mobile. There was no specific agreement between consignors and consignees as to the services of the said defendants, except that it was agreed that said defendants were to pay all costs and expenses, and were to charge and receive 5 per cent. for selling and 2½ per cent. on their advances. There did not appear to have been any understanding or agreement as to what should be the defendants compensation in case the goods were withdrawn before sale, and no provision for

such a case other than such as may be inferred from said receipt above copied. There was proof tending to show the value of the services rendered by the defendants. The evidence tended to show that all the charges and expenses charged by the defendants on the tobacco up to the time of its withdrawal from their hands were paid by the plaintiffs, but no commissions on unsold property, or compensation for the services of the defendants were paid, except such as are shown in schedules B and D, and none were ever demanded prior to the date of the letter of the 25th of November. All the tobacco except the sample boxes (the subject of this suit) were delivered to plaintiffs actually, and the proof as to the delivery of the sample boxes was as above stated. These sample boxes were in the defendants' office when this suit was brought.

The plaintiffs' proof tended to show that the defendants had waived all right to commissions or other compensation, and had in consideration of payment of their charges and advancements, as shown in schedule B, agreed to deliver up all the tobacco, and the whole transaction was ended. On the other hand, the evidence of the defendant, Sawyer, tended to show that the commissions were not charged on the unsold goods in the bills paid, because defendants still expected to sell the tobacco as factors of the plaintiffs, and the charges as commission on unsold goods were only intended to be reserved and not waived, and that the possession of the tobacco, and defendants' agreement to deliver the property, was obtained by deception and false representations, but the testimony on these points was conflicting.

When the testimony of witnesses was offered, to show the custom of merchants in Mobile not to charge commissions on goods not sold as above specified, defendants objected, on the ground that it was contrary to the written agreement between the parties, as appeared from the said receipt. This objection was overruled, and the plaintiffs were permitted to show by their witness that no commissions were charged when the goods were withdrawn with-

out sale. Some witnesses proved to the contrary, and the evidence was conflicting on this point. Some merchants made charges in such cases and some did not.

The defendants duly excepted to the ruling of the court.

The court charged the jury, among other things, "that it was his duty to charge upon the legal effect of the written receipt, and further said that it did not provide for commissions to be paid in case the goods were withdrawn before sale, but that commissions on sales must be caused by sales before they could be charged as such, and whether or not the defendants were entitled to compensation for their personal services, depended upon the defendants' proof, and they must look to that to see whether they were so entitled; that the defendants were not entitled to commissions as such on the goods not sold, unless the proof showed that there was an established uniform custom among merchants in Mobile, authorizing such charge; without such custom defendants had no lien on the goods sued for, for commissions on unsold goods; nor were the defendants entitled to any lien for their general services rendered by them, in and about the shipment, such as proposing it for sale, running about seeking buyers, and other such personal attention and duties; that to create a lien in favor of a factor for his personal services and attention, in all cases when the goods are withdrawn without sale, the charge must be for specifical liquidated sums, and not for such open demands as have to be enquired of and passed upon by a jury. The lien of a factor might be waived by a voluntary delivery of the possession of the property, and if the parties in this case had agreed to deliver up all the goods, and the bulk of them had been delivered in the name of the whole, and with the express intention to deliver the whole, that this would amount in law to a delivery of the whole, and that no mistake or misunderstanding of one of the parties would change this effect unless this mistake or misunderstanding was produced or contributed to by the other party; to which charges, and every part thereof, the defendants excepted."

At the request of the defendants the court gave to the jury the following charge:

"If the defendants have proved any and specific services necessary and proper in and about the shipment, and pertaining to the goods, and a part of their duties as factors, they are entitled to payment, and have a lien on the goods for such services."

The charge was given as asked, but with the qualification contained in the charge of the court, and to this action of the court in qualifying the charge, the defendant excepted.

The errors assigned are—

1. The charge of the court as excepted to in the bill of exceptions.

2d. The qualification of the charge asked by appellant.

3d. The ruling of the court in permitting witnesses to be examined as to the custom at Mobile, as shown in the bill of exceptions.

DARGAN & TAYLOR, for appellants.
L. GIBBONS, *contra.*

[The Reporter was unable to obtain the briefs in this case.]

PECK, C. J.—1. As a general rule, in the absence of any contract to the contrary, a factor, to whom goods are consigned for sale, is entitled to commissions as such only on the amount of the goods sold.—Story on Agency, § 329.

2. What these commissions are, is commonly regulated by the usage of trade, at the particular place where the business is transacted, and is usually the allowance of a certain per centage upon the value of the goods sold.

Where there is no usage of trade at the place, a reasonable compensation is allowed; but in all cases, this will be governed and controlled by the agreement of the parties, where such an agreement exists.—Same book, § 326.

3. A factor has a lien upon the goods in his possession, and upon the price of such as may have been sold, not

only for his commissions, but also for advances and for disbursements made to preserve the property, and for all necessary charges and expenses that are certain and not sounding in damages merely.—Story on Agency, §§ 356, 364, 376 ; 2 Kent's Com., 3d ed. p. 640, Lecture 41.  This lien, except in a few limited cases, confers on the factor no authority to sell the goods to satisfy his lien, but is confined to a right to retain the possession until his claims are paid by the owner, and is a defense to any action brought against him to recover the property—for example, if he has made advances upon the property, he may sell to repay himself for such advances, if the owner, after due notice of his intention to sell for such advances, fails to pay them.—Story on Agency, § 371 ; *Parker v. Brancker*, 22 Pickering, 40.

4. This lien may be lost by the voluntary parting with the possession.—Story on Agency, § 367 ; Jones on Bailments, appendix 52 ; *Sweet et al., Assignees of Gard, a Bankrupt, v. Pym*, 1 East, 18.  Or, it may be waived by any act or agreement between the parties by which it is surrendered, or it becomes inapplicable.  As if, while the property is in the hands of a factor, with a lien attached to it, he agrees to hold it for, or as the property of a third person, this amounts to a waiver of the lien.—Story, § 366.

5. Applying these principles to the case in hand, the first question that naturally presents itself is, what is the legal effect of the receipt of the appellants, defendants below, dated the 18th day of October, 1867.  This receipt is in the words and figures following, to-wit :

"MOBILE, Oct. 18th, 1867.

Received from L. C. Norvill & Co., on consignment and for sale, 594 boxes of tobacco, sundry brands, twenty-three cases of tobacco, sundry brands, shipped by P. & G. Lorillard, of New York, for account of J. T. Henderson and L. C. Norvill & Co., now stored in bonded warehouse No. 2, in the city of Mobile, 1st District of Alabama, which will be delivered on return of this receipt endorsed by them, and payment of charges and commissions incurred thereon.     (Signed)          SAWYER & BOULLET."

How this receipt came to be given is disclosed in the defendants bill of exceptions, and may be stated as follows: The said Henderson, of Georgia, and Norvill & Co., of New Orleans, in the summer preceding the date of said receipt, purchased said tobacco of said P. & G. Lorillard, of New York, plaintiffs below, on time, and would not be able to pay the note given for it at maturity, which, at the date of said receipt, would soon be due and payable, and they wished to negotiate with plaintiffs for the re-transfer of said tobacco. These facts were not known to defendants until the giving of said receipt, when they were explained to them, and said receipt was given to enable said Henderson and said Norvill & Co. to accomplish their object, and to help on their wishes in the matter; they desired to show to the plaintiffs the burthens and charges on the tobacco in the defendants hands; therefore, defendants gave said receipt, and at the same time a statement of the charges against said tobacco, which is made an exhibit to, and a part of said bill of exceptions, marked exhibit B. The gross amount of said charges, by said exhibit, appears to be $2,741 06, but credited with $1,431 50, leaving the balance $1,309 56 unpaid.

To understand the legal effect of this receipt, it must be interpreted in connection with said exhibit B, as a part of it, showing the burthens and charges on said tobacco at the time said receipt was given, with the proof disclosing the reasons for giving it and the objects and purposes for which it was given, and the use intended to be made of it. So interpreted, it amounts to an agreement on the part of defendants to deliver the tobacco to the plaintiffs, if it should be re-transferred to them on their returning said receipt, duly endorsed, and paying the charges due on the same, as specified in said exhibit B; and it also operates as a waiver of any lien the defendants may then have had on the tobacco for other commissions or charges not specified in said exhibit B. To permit the defendants to withhold the tobacco from the plaintiffs, upon the alleged ground that they have a lien upon it for other commissions

or charges not specified in said exhibit B, will be a manifest fraud upon them.

The plaintiffs might well trust to said receipt, and as the evidence shows, did trust to it and acted upon it. On the faith of said receipt the tobacco was re-transferred to them. The said receipt was endorsed, and with said exhibit B, specifying the charges on the tobacco, delivered to them, and of this the defendants were immediately advised by telegraph.

Thereupon the plaintiffs sent their agent to Mobile, to take possession of said tobacco, who paid to, and the defendants received from him, the money for the charges specified in said exhibit and receipted for the same—defendants thereby were legally bound to deliver the tobacco to plaintiffs' agent, and their refusal to deliver it on his request was a breach of their promise made in said receipt to do so, and the plaintiffs at once might have instituted an action for its recovery.

The defendants, although they received the money for the charges, &c., specified in said exhibit B, without objection, refused to deliver said tobacco to said agent, unless he would pay another account for $1,203 37, purporting to be an individual account of C. L. Norvill & Co. with said defendants, a copy of which is made a part of said bill of exceptions, and marked exhibit D. This the said agent at first refused to pay, but at length did pay, on the agreement of the defendants to deliver to him the whole of said tobacco. And on the payment of said account, the defendants did deliver to said agent the tobacco then in the said warehouse, but a part of it, consisting of certain sample boxes, &c., (the subject of this suit,) being in defendants' office, they agreed to hold them subject to the order of said agent. A few days afterwards, said agent sent for said sample boxes, when defendants refused to deliver them, but addressed to said agent the note or letter, dated Nov. 25th, 1867.

No intimation is given in this letter that the agreement to deliver the tobacco, and the whole of it, on the payment

of the said sum of $1,203 37 was not fairly made, or that it was obtained by any false representations of said agent, or of any one else, or that said sample boxes were withheld because they were entitled to be paid any thing for their labor or trouble in preparing the tobacco for sale, or for any other reason than the one stated, to-wit: that by some agreement, made when they first received it for sale, they were to be paid certain commissions, without stating what the agreement was, or the commissions thereby stipulated to be paid. If any doubt can exist as to the waiver of any lien on the tobacco for any burthens or charges beyond what was embraced in said exhibit B, it is removed by the agreement to deliver it on the payment of said sum of $1,203 37. That agreement is too plain and explicit to be misunderstood. Besides, no such lien is named in said letter. The only claim there mentioned is based upon some arrangement or agreement, not with the plaintiffs, but with the parties from whom they received the tobacco. Whatever that may have been, it can not be set up as a defense to this action. It imposes no obligation on the plaintiffs, nor can it create any lien on the property, to their prejudice. If any such lien existed in favor of the defendants while the said Henderson and Norvill & Co. continued to be the owners, it was destroyed by the retransfer of it to the plaintiffs, by virtue of said receipt of the 18th of October, 1867, and the subsequent agreement of defendant to deliver it to their agent on the payment of said sum of $1,203 37 above referred to. Any claim the defendants may have, by the alleged agreement in said letter for commissions, or on any other account, can not justify or excuse the violation of their agreement to deliver the tobacco to the plaintiffs' agent; at most, it is a mere individual claim against the parties with whom the said agreement may have been made, which can only be enforced by an action personally against them. So, too, if the defendants, by virtue of any understanding or agreement with the parties from whom they received the tobacco, are entitled to any compensation on its withdrawal before sale, it is a personal claim in their favor, not against

the plaintiffs, but against those parties. Such a claim to compensation is, in no proper sense, a lien on the property withdrawn. The very basis of a factor's lien depends upon his possession of the property on which the lien is claimed, and when the possession is parted with, or an agreement is made to deliver the property to, or to hold it for a third person, the lien is lost or waived.—Story on Agency, § 366. But there is no evidence in this case to sustain the alleged claim of defendants, set up, or referred to, in said letter. On the contrary, the bill of exceptions states that "there was no specific agreement between the consignors and consignees, as to the services of the said defendants, except that it was agreed that defendants were to pay all costs and expenses, and to charge and receive 5 per cent. for selling, and $2\frac{1}{2}$ per cent. on their advances. There did not appear to have been any understanding or agreement as to what should be defendants' compensation in case the goods were withdrawn before sale, and no provision for such a case other than may be inferred from said receipt above copied." (The said receipt of the 18th of October, 1867.)

Whatever compensation the defendants might be entitled to, if any, on the tobacco withdrawn before sale, under the circumstances, depended upon the usage of trade on this subject in the city of Mobile. There was no error, therefore, in permitting witnesses to be examined by the plaintiffs, as stated in the bill of exceptions, against the defendants' objection, "to show the custom of merchants in Mobile not to charge commissions on goods not sold, as above specified." The ground of defendants' said objection is, "that it was contrary to the written agreement between the parties, as appeared from said receipt," that is, the said receipt of the 18th of October, 1867.

This objection is clearly without force, as said receipt says nothing on this subject.

Taking the charge of the court as a whole, or by its several paragraphs, I am unable to discover any error available to the defendants in it.

Some of its parts or paragraphs may not seem to be

altogether pertinent or necessary, nor, perhaps, expressed in the clearest language, but the law is correctly stated in all of them, and I do not see that the jury could be thereby misled to the prejudice of the defendants. The only real defense to this action depends upon the fact, whether the defendants had a lien on the property, at the time the suit was brought. Whatever lien they may have had, if not discharged by the payment of the burthens and charges specified in the statement of them, delivered to the consignors, at the time the said receipt of the 18th of October, 1867, was given, was undoubtedly waived by their subsequent agreement to deliver the property to the plaintiffs' agent, on the payment of the said sum of $1,203 37. That was their agreement, and having received the consideration, and retained the same, they have no justification or excuse for refusing to discharge the duty thereby imposed upon them. It seems to me, on the case stated in the bill of exceptions, the court, without error, might have instructed the jury, if they believed the evidence, their verdict should be for the plaintiffs.

After said charge was given, the defendants requested the court to give to the jury the following charge in writing, to-wit: "If the defendants have proved any specific services, necessary and proper, in and about the shipment, and pertaining to the goods, and a part of their duties as factors, they are entitled to payment, and have a lien on the goods for such services."

This charge the court gave "in the terms in which it is written," but said it was given "with the qualifications contained in the first charge," to which qualifications defendants excepted. If services such as referred to in this charge were rendered, they were rendered by the defendants before their said agreement to deliver the property on the payment of said sum of $1,203 37, and if they then created a lien on the property, it was, with all other liens, waived by said agreement. For this reason, if for no other, said charge might, and I think should, have been refused, and if the charge itself might have been refused,

without error, it follows that the qualification, if an error at all, is an error without injury. The judgment is affirmed at the appellants' cost.